The argument in the United States v. Brown. Mr. Beers, it seems like you're first up. Thank you, Your Honor. May it please the Court, my name is Paul Beers. I'm in private practice in Roanoke. I want to thank the Court for appointing me to this very interesting appeal. Can you raise that just a little bit? I want to make sure that I hear you. Yes, sir. That seems fine. All right. I represent Terrance Brown, and just two issues I have here. One, Mr. Brown moved under Rule 29 for judgment of acquittal at the close of the government's evidence on several charges, two FICAR charges under Section 1959 and two Section 924C charges. Judge Urbanski correctly found that there was no venue. Venue was improper in the Western District of Virginia, and he dismissed those charges. But after trial, he ruled that that dismissal should be without prejudice. And I think that was an error. It should have been with prejudice. The Court has pointed out that Judge Craven in 1972 said exactly, found the case that I was looking for, and I didn't find it my own. Mr. Brown was tried in the Eastern District. He was. And acquitted. He was. Correct. Yes, Your Honor. Why didn't that moot this issue? Two reasons, Judge. I think Mr. Brown, I guess the issue is what relief can this Court afford Mr. Brown, given the fact that he obtained an acquittal in the Eastern District subsequently? I think this Court could afford him a repose if it were to send this back, and he would end up with a judgment of acquittal that would let him sleep at night, that he's never going to be charged. He's already got a judgment of acquittal. Well, it's interesting, Judge. The Vicar charges in the Eastern District are identical. The Section 924C charges are not identical. In the Western District, he was charged under the use and carry of a firearm in relationship to a crime of violence, prong of 1924C. In the Eastern District, he was charged under the possession and furtherance of a crime of violence or drug trafficking crime, prong. Yes, but on all the counts that were dismissed for want of opinion, he has an acquittal. My position would be if they tried to charge him, it would be just that. I would argue double jeopardy. But they're not identical. The Section 924C charges are under a different. The acquittal is the end of it. Other than personal vindication, under what relief could he obtain? Unless the government were to take the position that that's a different crime. In the Eastern District, he was charged under a different prong of 1924C. And the cases and circuits are not uniform, whether that's two different crimes housed within Section 924C or one. So I think he's entitled to repose by getting a judgment of acquittal below in the Western District of Virginia so he could never have to worry about the government coming up with a bright idea, well, we can charge him again. Before your time's up, you represent Mr. Brown, right? Just Mr. Brown. Yeah. Could you, I'd like to hear your sentencing argument. Yes, Your Honor. The sentencing argument is that the drug weight assigned to Mr. Brown was too much. The clearest error that Judge Urbanski committed at sentencing was assigning him, Mr. Brown, all the cocaine trafficking of a purported subordinate, Mr. Owens. There was evidence that they were, not much, but there was some evidence they were in the marijuana trafficking business together, but there was no evidence they trafficked in cocaine together. But the judge saddled Mr. Brown with all of Mr. Owens' cocaine and marijuana. Not all of it, but he assigned, he attributed cocaine to him that was Mr. Owens'. And varied upwards significantly. He varied as far as he could go, which was 240 months, based on that. Varied upward by about 194 months. Is that right? No, he varied upward by five months, other than the top end of the guidelines. And that was based largely on that drug weight. The cocaine that was Mr. Owens' cocaine, attributing that to Mr. Brown without any evidence. So he shouldn't have done that, that was erroneous. That was not relevant conduct on the part of Mr. Brown. So what we're asking this court to do is to remand, to reverse that drug weight finding, and to remand for resentencing on that. And also that would have the... It was a clearly erroneous standard? Yes, sir, it is a clearly erroneous standard. And didn't Brown and Owens, didn't they often sell drugs together? I think there was evidence that they often sold marijuana together. But that's... But the variance was based on cocaine? Largely. I think the variance above the guidelines was the judge said, well, you're very violent. You've committed these violent acts. You've been acquitted here, but you've done violent acts, so I'm going to vary as far as I can, which is 240 months. But resentencing, if the judge understood that that should have been an outright acquittal, of course he has been acquitted on these charges in the Eastern District, the judge might take a different look and not vary upward like that. If there are no further questions, this concludes Mr. Brown's portion of the argument. Thank you very much. Thank you, Your Honor. Ms. Scott? Tell us who you're representing. Good morning, and may it please the Court. Good morning, and may it please the Court. Jubal Scott. I represent Michael Jones. In order for a conspiracy to exist, there must be a meeting of the minds. People must engage in activity with one another, and that activity must be interdependent, and there must be evidence that that activity was based upon an agreement and collective activity. In Mr. Jones' case, the government failed to provide sufficient evidence to the jury that he was engaged in a drug conspiracy. It was clear that the government had evidence, if we're looking at the sufficiency standard, that Mr. Jones... Wasn't he the one who was directing the conspiracy from New York? Your Honor, what the government provided evidence of is that Mr. Jones was an integral member of the gang for which he had membership. They did not have evidence that he was directing a drug conspiracy. What they attempted to do was to say, drug dealing is the business of the gang. But he was directing activities in Virginia. No. There was another person that directed activity in Virginia. There was a transaction that Mr. Jones engaged in. I thought Jones was telling, like, for example, Jones was telling Brown and Williams to speak in code to elude the police, and that was going to be designed to cover up the Bloods' trafficking activities, and Jones was directing Williams to distribute drugs to other Bloods so that, quote, everybody can eat. And Jones... Members of the conspiracy were boasting that they had met Jones face-to-face, and Jennings was sending a list of the Virginia Blood membership to Mr. Jones, which would be an odd thing to do if they were not tied in a conspiratorial activity together. So what do you say about all that evidence which was before the jury? So what I say about that evidence is that it's conflating two different things. The evidence that it's conflating, when they discussed the code, I don't believe the evidence was that they were discussing the code specific to drug dealing activity. They were referencing the PO, the PO being the rules of the gang. Isn't that a jury question? What the code, I mean, what these terms meant? Well, in the record, the PO was described as the rules of the gang, so I think that that is the evidence, and so I think the difference here is that, if you recall, he was acquitted on count one, which was the Rico count. He was convicted on the drug conspiracy. There was a lot of evidence. I think it was conflated, and so I think that if we're looking at what the jury, if we're looking at the evidence that supported the drug conspiracy and not the gang activity, it's separate. Well, why would that necessarily be so? I mean, gangs very often finance themselves with drugs, and they're very closely linked with drugs, and they enforce discipline with respect to drugs. I mean, when you say they're separate, is that really true? Well, couldn't a jury see them as intertwined? They could see it as intertwined if the government had evidence that that were the case. Gangs support themselves by many different ways. Sometimes it's drug dealing. Sometimes it's fraud activity. Sometimes it's, you know, robbery. What the specific business of the gang was, there was no evidence to that respect. The government asserts that money from drug dealing went to the gang, but the bulk of the drug dealing that was contained within the evidence at trial was with people who weren't in the gang. There were a whole lot of little, you know, buyer-seller relationships on the side. It wasn't a well-oiled machine that you would ordinarily see when you have a gang that is in the drug dealing business. The source wasn't necessarily the gang, the customers, the downline wasn't members of the gang. There was no evidence that a single monetary transaction went back to New York to help facilitate activities of the gang. A conspiracy doesn't have to be well-oiled or run smoothly. A lot of them are a bit chaotic. Agreed, Your Honor. All conspiracies are not great conspiracies, but the government is required to offer evidence that the activity does, in fact, make up a conspiracy. Again, I think that it's very important that you distinguish between the evidence that's on the record and what they did provide evidence of. Had he been convicted on count one, I don't think that we would be in a position to say that the government had not provided sufficient evidence that that activity had taken place because the bulk of the evidence and, frankly, the bulk of their argument is with regard to count one. They perceived, I believe, that the arguments on count one would necessarily encompass count two, and so they failed to put forth evidence on the drug-dealing conspiracy. I'd note that there are multiple substances that were being dealt between different people, again, not necessarily related to one another. In the transaction with Williams that the court referenced, which, by the way, could not be part of a conspiracy because she was a government informant, but in the transactions with Williams it was heroin. No information on the record suggests that Mr. Jones was engaged in dealing marijuana, cocaine, or any of the other substances that were part of the record and made up the transactions with the other. Sometimes the leaders of the conspiracy go out of their way to maintain their deniability and to keep their fingerprints off of certain things, and doesn't that suggest that the jury should be allowed to draw its own conclusions? They should be allowed to draw conclusions from evidence that is presented to them. That is absolutely correct, Your Honor, and the government didn't provide that evidence. It simply didn't exist. They did not provide evidence that there was a meeting of the minds between Mr. Jones and others to conspire broadly. They did have evidence that Mr. Jones participated in the two transactions in New York that were with a confidential informant, and that certainly would not rise to the level of a conspiracy because, as the court knows, you cannot conspire with a government informant. They didn't have any other evidence with regard to a drug conspiracy on Mr. Jones, and so we believe that Mr. Jones' conviction... I don't think the evidence just meant the conspiring with Williams. It was the government informant. I think the evidence meant a conspiracy with Mr. Brown and Mr. Jennings. Your Honor, there's evidence that others conspired with one another, but not that Mr. Jones conspired with Brown and Jennings, and so for that reason we would ask that you set aside the conviction of Mr. Jones. Thank you. Thank you. Mr. Woodward, who do you represent? Your Honor, I represent Clifford Jennings, and I would tell the court I was the lead trial counsel on the case in the Eastern District on the RICO where there was the acquittal, so I'm going to restrict myself to the sentencing argument I made and join counsel's argument about the conspiracy, but if the court has any questions, I would just tell you in a context that the second jury that looked at this case rejected all claims that the drug dealing had anything to do with RICO. That was listed as a RICO predicate act. In Virginia, they brought all the guys from New York that were not on trial in the Western District. I did not try that case. I was appointed to this appeal, and they had all the New York people there. They put all of that on, and they were all found not guilty. Did Judge Urbanski make a comment that what he was faced with here was about the most violent kind of drug and gang activity that he'd ever seen? Well, he did make that comment, Your Honor, but you have to remember my client was never charged. There was not one piece of evidence that my client engaged in any violence. That was conceded in the Eastern District. In the Western District, nobody put on any evidence that he shot anybody. He was charged in the Eastern District, and the evidence was put on in the Western District that he carried a gun during the drug transactions while he wasn't charged with that. In the Eastern District where he was charged with it, Judge Jackson struck it on Rule 29. It never even got to the jury. What's your sentencing argument? My sentencing argument is simply this. I understand the law, the difference between notice on variance and departure. My sentencing argument is that there was a pre-sentence report done. The probation officer said nothing about Mr. Jennings' criminal history being understated. The United States filed a position paper. They said nothing about it being understated. The defense filed a position paper, and then Judge Urbanski comes into court and sort of sua sponte says, well, I think his criminal history is understated, and therefore I'm going to vary upward and gave him two years over the top end of the guidelines. I think that's at best unfair. Nobody had a chance to brief that. Nobody had any notice of Judge Urbanski. Your sentencing, as I recall it, seemed to rest on a credibility finding with respect to Mr. Gaiman. Well, the drug weight it did, Your Honor. You're correct about that. I've made an argument unless you have some questions. I didn't have much. The drug weight, you're right. But the criminal history category was strictly a ruling. If you look at the transcript, nobody had any clue of that until Judge Urbanski went through the factors, arrived at the advisory guideline range that he thought was appropriate, and then he said, I don't believe his criminal history adequately reflects his criminal background, and then they launched into this argument. The United States attorney, after having asked for a guideline sentence in its paper, asked for a sentence of almost double, actually from 97 was the top, almost triple the guidelines based on the criminal history in court. And to be fair, Judge Urbanski didn't impose a sentence that high. But I see my time is up. I would ask that Mr. Jennings' case be remanded for resentencing and would also join in with my colleague's argument on the drug conspiracy. All right. We thank you. Yes, sir. All right. Mr. Booth. With respect to the venue question, our position is that the district court didn't err by dismissing without prejudice the Vicar and related firearm counts for improper venue instead of ordering an acquittal. At the outset, we believe this case is moot because the defendant was retried and acquitted on those charges in another district, although my colleague points out that the firearm charges are not absolutely identical from the eastern district to the western. They are substantially identical. And for double jeopardy purposes, we believe they are the same offense. This court cannot order any practical relief to the defendant. Judge Agee, you are right in saying that the order of acquittal is the relief that he's given. And so we believe there is no further relief, practical relief, that this court can give. If this court believes that the issue is not moot, we believe the district court's order is correct. We believe that an acquittal is only proper when the prosecution's proof is insufficient to establish criminal liability for an offense. Venue, by contrast, relates solely to the location of an offense, not the defendant's criminal liability. Because of that, this court, which had decided the Walden case in 1972 and held to the contrary, we believe that this court should take the opportunity and overrule Walden today. Well, if we decide it's moot, there's no reason to get into that. That is correct, Judge Agee. This is my secondary point. Assuming that you don't find it moot, we would ask you to overrule Walden because the rationale used in that case and the cases that it cited are inconsistent with subsequent Supreme Court decisions that have defined acquittal narrowly and have said that an acquittal does not include a procedural error that does not go to the sufficiency of the government's proof. Let me turn, if there are no further questions on that point, let me turn to the sufficiency argument made by Mr. Jones. If you look at the evidence in the light most favorable to the government, in viewing that circumstantial evidence is often shown to prove conspiracy, we submit the evidence is more than sufficient. The evidence generally from many government witnesses showed that Jones was a high-ranking godfather in the New York Bloods and that his primary responsibility was to give instructions to the Virginia Bloods so that they would carry out their activities. He also supervised the supply chain, didn't he? Well, he did in many respects. As you pointed out, Judge Wilkinson, at one point he and Brown, which shows the link between the two of them, left the voicemail to Williams telling her to use code to avoid detection. I mean, weren't people displaced from their positions in the supply chain by Jones if they weren't measuring up? That is true. There was the specific reference that at one point the New York Bloods, it didn't say specifically whether Jones or his uncle Burroughs ordered the shift, but at one point Jones had, as they said, had mishandled some money perhaps, and as a result the New York Bloods took the heroin supply away from Jones and gave it to Jennings. And then there was evidence that showed that Burroughs and Hicks, the leader of the Lady Bloods, came down at one point to talk to Jennings, and that showed the supervision between the two. The single conspiracy business is generally a jury question, and Judge Urbanski made it clear that finding separate conspiracies doesn't amount to a single conspiracy. So the jury was well aware of what the law was when it made a finding that there was a single conspiracy. That is correct. That's our position. It's very different from the issue that Jones has written that he wasn't even in it. Can I? Yes. Go ahead, Judge Sackler. I was going to go to another topic. Okay. So what is not as clear to me is in Brown's sentencing, can you direct me to where in the record the court justifies the upward variance for Mr. Brown? I'll have to hear that because he gave the jury one. Wasn't it based on Owens selling marijuana and cocaine with Mr. Brown? What happened in that case was that what the PSR did was that it took the lowest amounts of Owens' drugs that he pled to in his guilty plea. He was dealing with whenever you have multiple drugs in a case. But where's the connection to Brown and Owens' cocaine in the sentencing court's recitation? Well, I have the references to Brown and Owens' cocaine. There was testimony from several witnesses such as Day who indicated that Brown and Owens were selling both cocaine and marijuana. There was testimony in the record. Testimony at the sentencing? That was at the trial, actually. I mean, what happened at the sentencing was that the PSR. I'm looking at the sentencing. Well, at the sentencing, the evidence came up from the PSR was that Owens had pled guilty, and he had pled guilty to certain amounts. And the PSR had taken the lowest amounts of those drugs and combined them into making the amount to satisfy the threshold drug quantity that Brown was responsible for. How did the PSR connect up Owens and Brown? Well, what had happened was there was, first of all, there was testimony in the record in which Brown had bragged that Owens was his right-hand man. That was the first piece of evidence, and I believe the district court specifically relied on that. There was also Day's testimony that Brown sold cocaine and heroin. That's at JA 537. There was Johnson's testimony that Brown sold cocaine in jail, and that Browns and Owens sold dope together on the streets, and Brown and Owens once made a bet as to who could sell the most drugs in one day, and that's at JA 2575, 2578. Okay. So then you're saying that at the sentencing at JA 3049, when the judge said, I credit the testimony of Anthony Day and of Adrienne Williams. Adrienne Williams is the government informant. So that testimony included a connection between Brown and Owens' cocaine distribution.  But there was, again, also when you read that Brown was selling. Because the only drug the court talks about then is that Mr. Brown and Mr. Owens were selling marijuana together. It doesn't say cocaine in the sentencing. All right. Well, what has happened, you also need to look again. Yes, there was part of that, but there was. The judge also relied on. But how much do I need to. Shouldn't there be a particularized finding here that I can look at the transcript and tie it up without going hither and yon and reading the entire trial transcript to figure it out in the sentencing, figure out what happened in the sentencing? Well, the district court, I mean, he said at one point, he said he credited the amounts. But then he ultimately said, and this may be one of the reasons you don't have it, but he said that he would have given Brown the very same sentence. And that is enough. I'm sorry, Judge, I don't mean to interrupt. Yeah, I saw that. But the sentence between if he's credited him with only marijuana versus cocaine, the actual difference is, I think, 194-month variance. And I'm not sure just saying, oh, I would have given him the same sentence on 194-month variance is the same. At some point there has to be a particularized showing for that sort of increase rather than just sort of rote language. Well, the district court's finding, which you're openly going to. The district court may well, if it was remanded for resentencing for Mr. Brown, may well do that. But I'd just like to see it tied up a little better. Well, the district court made the finding that he was responsible for 180 kilograms of marijuana. And that finding is not clear. What has happened was that the PSR had indicated that it had relied primarily on Brown's supervision of Owens and who admitted that his trial, he was responsible for the equivalent of 100 to 400 kilograms of marijuana. And the PSR attributed the lowest amounts of Owens' drug weight to Brown to conclude that Brown was responsible for the 180 kilograms. So the PSR was certainly entitled to rely on the lowest amounts that Owens had pleaded guilty to in his separate trial. And they used primarily that amount to come to the 180. The PSR also relied on Day's trial testimony that he sold Brown four ounces of marijuana and Brown's purchase of eight balls of crack cocaine from Jennings in September of 2004. Okay. So are you saying that the amount of marijuana alone would justify that variance? Well, I'm saying the amount. If we took cocaine out of the equation. Well, what happened was is that Owens' trial testimony involved both cocaine and marijuana. Right. I understand that. And that's where we go back to the district court judge did say at sentencing, I credit the testimony of Mr. Day. In other words, he accepted the testimony. He agreed with the PSR with respect. Now, it's important to understand why he did that. Remember what happened in this case. Owens came up there and disavowed everything. And the district, he said, no, we were just separate people. District court didn't believe anything Owens said. Didn't believe anything he said. So he was entitled not only in figuring that he's lying about this to accept the PSR's determination that this is how much Owens was. Again, it was important for, you know, Brown's, I know I've repeated this. Owens was my right-hand man. And so it was appropriate for the district court judge to credit the lowest amounts that the PSR found with respect to Owens' deal. And, again, the district court indicated that he would not only have given him 240 months. This was the worst case of violence he had ever seen. And he probably would if he had been entitled to go up even further. And this court's rule is as if a district court would have given the same sentence regardless. That's sufficient. If there are no further questions, if I missed anything, I'll be glad to answer anything. We ask to affirm the judgment. Thank you. We have no further questions. Very briefly, Your Honor. May it please the court. You know, some straight comment that Mr. Brown supposedly said Owens was his right-hand man is not a particularized finding to attribute Owens' cocaine trafficking to Brown. It's just not. It's some vague statement. But there's no evidence that these two gentlemen were in the cocaine trafficking business together. There is evidence they sold marijuana together. But those are vastly different drugs. They carry vastly different penalties. And the judge just meshed it together without making any particularized findings at all. I think this case, at a minimum, should be remanded for the judge to reevaluate that issue, particularly since Owens came live and in person and testified and denied any cocaine trafficking relationship between them and sentencing. If there are no further questions, this concludes Mr. Brown's argument. Thank you, Your Honor. I see you're court appointed, Mr. Beers. Yes. I just wanted to express the court's appreciation. We've also got Mr. Scott is entitled to some further rebuttal. Thank you. Mr. Scott, do you want some rebuttal time? No. Okay. Pardon me? Oh. Mr. Woodward, I see you're court appointed. That's fine. I wasn't taking that as a slide. Mr. Scott, were you court appointed? I'm the public defender. Are you the public defender? All I can say is this sheet is a little bit confusing to me. But whether you are court appointed or whether you are public defenders, you have all presented a good case and served your clients very well. And that goes for you too, Mr. Booth. I don't know why. This is your third argument here, so you've had a busy week, haven't you? Well, I hope everybody has a great weekend. We will come down and we will adjourn court and come down and recounsel. This honorable court stands adjourned. Sign and die. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, G. Steven Agee, Stephanie D. Thacker